SOMMERS, Respondent, vs. HAMBURGER, Appellant.

*September 9 — October 22, 1895.*

*Debtor and creditor: Joining claims in one note: Perjury: Fraud: Public policy.*

1. An affidavit by a creditor that the whole amount of a judgment note was due him was not perjury, although such note was given for the claims of himself and others, where the arrangement was that he should take and enforce it for the benefit of all.

2. An arrangement by which the claims of several creditors are included in a single judgment note payable to one of them is not fraudulent or against public policy, at least as between the parties themselves.

3. If an action to set aside a judgment entered on such note is settled by the payee in such way that he realizes a part only of the amount thereof, the other creditors whose claims were included in the note may recover from him at least their proportionate shares of the sum so realized.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

Action for money had and received. The facts are that one Wigderson, in June, 1892, was a merchant, in business at Waupaca, having a stock of goods worth at least $7,800, and was then insolvent, being indebted to an amount exceeding $13,000, among which debts was a debt to the appellant, *Hamburger,* of about $2,200, a debt to the plaintiff, *Sommers,* of $300, and a debt to one Robinson of $250. On the 30th of June, 1892, Wigderson gave several judgment notes in favor of several of his creditors, upon which judgments were immediately entered in the following order of priority: Wau-

paca National Bank, $1,036.20; Landauer & Co., $1,496.76; *Israel Hamburger*, $2,777.47; L. Geisenfelt, $1,125.35; S. Fein, $590.09; and Mary Wigderson, $1,682. It will be seen that the judgment note given to *Hamburger* was for more than $2,700, while *Hamburger's* claim was for but $2,200. This arose in this way: When Wigderson was about to give *Hamburger* his note, Robinson was present, representing his own claim and that of *Sommers*, and desired payment or security for both claims. It was suggested that all three claims be combined in one note, to be given to *Hamburger*, to save the expense of three judgments, and that when *Hamburger* collected his judgment he should pay Robinson and *Sommers* their claims. To this Wigderson and *Hamburger* agreed, and the note was given for the gross amount of all three claims, and put in judgment in the name of *Hamburger* alone.

Executions were at once issued on the judgments, and the entire stock seized by the sheriff and advertised for sale. While the stock was in the hands of the sheriff under the executions, actions were begun by several unsecured creditors of Wigderson, whose claims aggregated more than $4,000, and the stock of goods attached, and notice given to the sheriff that the attaching creditors claimed that said judgments were fraudulent and void, and that he would be required to pay the money realized from sale of the goods into court. The sheriff sold the goods for $7,800 to the appellant, *Hamburger*, and paid the money into court, and returned the executions with a statement of the facts. An action in equity was thereafter begun by the attaching creditors as soon as they had obtained judgment on their claims, for the purpose of setting aside the judgments on *cognovit* as fraudulent and void, and obtaining an order of the court for the payment of the money realized from the stock to them in the order of their attachments. This action was never brought to trial. *Hamburger* bought up the claims of

the attaching creditors at the rate of sixty cents on the dollar, as he testifies, and settled the action.  Out of the $7,800 deposited in the bank, the claims of the Waupaca Bank and Landauer & Co. were at once paid in full, and the judgments discharged.  *Hamburger* discharged his own judgment, and acknowledged payment of it in full upon the docket, as well as the judgments in favor of Geisenfelt, Fein and Mary Wigderson, of which he had assignments; but he claims that the amounts actually paid out to these first judgment creditors, together with the amounts paid to the attaching creditors to settle the suit and the necessary expenses of the litigation, aggregate about $6,800, and that he has still $300 to pay to his attorneys, so that he has realized but $700 to apply on the *Hamburger* judgment, notwithstanding it appears on the record to have been paid in full.

There was a sharp contest in the evidence as to whether *Sommers* or Robinson knew about or authorized the settlement of the equitable action to set aside the judgments, *Hamburger* claiming that they authorized it, and they denying all knowledge of it.

A motion to direct a verdict for the defendant was overruled, and exception taken; and the cause was submitted to the jury upon a charge to which there is no exception.  A verdict for the plaintiff for the full amount of his claim, with interest, was rendered, and from judgment thereon the defendant appealed.

*John H. Brennan,* for the appellant.

*Edward E. Browne,* for the respondent.

Winslow, J.  Two principal contentions are made by the defendant:  First, that the plaintiff cannot recover, because he must trace his right to a remedy through a contract void as against public policy; second, that *Hamburger* had a right to settle the entire claim in good faith, and to accept a smaller sum than the face of the claim, and that in the ab-

sence of malfeasance or neglect such settlement would be
binding on the plaintiff.

In support of the first contention it is said that the ar-
rangement between Wigderson, *Hamburger*, and Robinson,
by which the three claims were consolidated and put into
one judgment note to *Hamburger*, contemplated both the
commission of a crime and the perpetration of a fraud on
Wigderson's creditors. The crime referred to is the crime
of perjury, in the making of a false affidavit by *Hamburger*
to the effect that the whole amount of the note was due
him before the rendition of judgment on the note. Is such
an affidavit, under such circumstances, perjury? If not,.
then the argument on this branch falls. We do not think it
can be considered perjury. The arrangement between the
debtor and his creditors, by which one creditor was to take
and enforce a judgment note for the claims of both, involves
nothing against good morals or good faith, at least so far as
the parties themselves are concerned. It would seem to
create a trust relation, making the holder of the note a
trustee for his fellow creditor in that part of the security
which was given for the benefit of the other, and not only
a trustee to hold the note, but to enforce it. If such was
the relation of the parties, and we think it was, then, clearly,
it was not perjury for *Hamburger* to swear that the note
was due to him, for a part was due to him personally and a
part to him in his trust capacity. Whether this trust ar-
rangement was one which bound the parties in its incep-
tion so that they could not rescind it, or whether it could
have been disaffirmed by either party before it was acted
upon, it is unnecessary to decide. It was not disaffirmed or
rescinded, but carried out, and it involved no moral wrong
in any view which we can take of it. It is said, however,
that it was a fraud upon creditors. This question is not
really involved in the case. There are no creditors here to
raise it. There are many transactions which will be held

fraudulent at the suit of a creditor, but which will be held good as between the parties. The debts for which the note was given all appear to be honest debts, and there was no fraud or moral turpitude in joining three honest debts in one note, nor are there any considerations of public policy which forbid it, at least when the question arises between the parties themselves.

As to the second contention made by the defendant, namely, that he had a right to settle up the litigation, and that in the absence of malfeasance his action is binding on the plaintiff, it may for the purposes of this case be admitted. Conceding that such is the law, still it appears beyond dispute that *Hamburger* received and has $700 upon the $2,700 judgment. Certainly the plaintiff has a right, in any view, to recover his proportionate share of the $700. Therefore the motion to direct a verdict for the defendant was properly overruled. There are no exceptions to the charge. Therefore it must be taken to state the law correctly. It is unnecessary to repeat it here. It is sufficient to say that, under the charge, there was sufficient evidence to justify the verdict rendered.

There are no other questions in the case which we consider of sufficient importance to state.

*By the Court.*— Judgment affirmed.